IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BASIL BROOKS, | : | |
|     Petitioner, | : | |
| v. | : | |
| ROBERT GILMORE, | : | CIVIL ACTION |
| Superintendent, SCI-Greene, and | : | No. 15-5659 |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, | : | |
|     Respondents. | : | |

MCHUGH, J.                                                                                                                                                AUGUST 11, 2017

**MEMORANDUM**

The requirement that a criminal conviction be based upon proof beyond a reasonable doubt has its roots in the Due Process Clause of the Fourteenth Amendment and "plays a vital role in the American scheme of criminal procedure," as "a prime instrument for reducing the risk of convictions resting on factual error." *In re Winship*, 397 U.S. 358, 363–64 (1970). It is a principle of particular importance where the evidence of guilt can fairly be questioned, and a principle that lies at the heart of this petition for a writ of habeas corpus. Petitioner Basil Brooks was convicted of first-degree murder and is serving life without parole following a trial at which reasonable doubt was explained to the jury through an emotionally charged hypothetical, which asked the jurors to analogize their deliberations to making a decision about life-saving medical treatment for a loved one when only a single option exists. Because I am convinced that the use of this hypothetical improperly elevated the level of doubt necessary to secure an acquittal, Petitioner is entitled to a new trial.

## I. Underlying Facts

Just after midnight on December 18, 2005, at the intersection of 54th Street and Columbia Avenue, two men ran up behind Derrick Jones and shot him dead. Angelo Slaughter, the sole eyewitness to the crime, has testified that Petitioner was one of those men. The other man has never been identified.

At trial, the Commonwealth presented no physical evidence of Petitioner's guilt, but instead relied on the testimony of the purported eyewitness, Slaughter. Slaughter testified that he was eating Chinese food in his car on the night of the shooting, and that the victim, Jones, came up to him and asked to borrow a gun. Slaughter declined to lend Jones a weapon, and then watched two men run up to Jones, shooting as they ran. Slaughter identified one of these men as Petitioner.

Slaughter, however, was certainly a questionable witness. He gave police two contradictory statements about the murder. In his original statement, he named an entirely different person as the perpetrator. Only because "the cops just kept bothering [him]," he told the jury, did he ultimately "g[i]ve up" and make a second statement naming Petitioner as the man who committed the crime. NT 10/4/07 at 88. Slaughter also initially failed to identify Petitioner in a photo array, selecting two other black males before finally landing on Petitioner. *Id.* at 181–82. Finally, at Petitioner's preliminary hearing, Slaughter then reversed course again, testifying that his statement against Petitioner was a lie. *Id.* at 183.

Slaughter was under court supervision at the time of trial, had two open cases in a nearby county, *id.* at 98, and when he witnessed the shooting, he was high on Xanax and "buzzed" on alcohol. *Id.* at 99–100. He had been charged with carjacking, robbery, and weapons offenses in 2005, and though these charges were pending when he gave both his statements to police about

this case, they were dismissed for lack of prosecution on March 28, 2006—just weeks after he gave the second statement. And while there was other evidence that Petitioner had both motive and opportunity to commit the crime, and the motive evidence was corroborated by a police witness, Slaughter's testimony was the lynchpin of the case.

In fall 2007, the jury convicted Petitioner of first-degree murder and related offenses. He is serving a sentence of life without parole.

## II. Procedural History

Petitioner filed timely post-sentence motions after trial, which were denied. He appealed to the Pennsylvania Superior Court, which affirmed the judgment of his sentence. The Pennsylvania Supreme Court denied *allocatur* (discretionary review). In 2011, Petitioner filed a pro se PCRA petition, which was later amended by counsel.

The Amended PCRA Petition raised five claims for relief, all of which sounded in ineffective assistance of counsel. Petitioner claimed his trial attorney was ineffective because he failed to (1) impeach Slaughter and another witness with their criminal histories, (2) request a *Kloiber* instruction, (3) object to the jury instruction on reasonable doubt, (4) object to the judge's decision to close the courtroom during voir dire, and (5) object to the trial judge's exclusion of Petitioner for portions of voir dire. The PCRA court dismissed these claims without a hearing, and the Pennsylvania Superior Court affirmed. The Pennsylvania Supreme Court again denied review, and Petitioner filed this timely petition for a writ of habeas corpus.

I have the benefit of a well-reasoned Report and Recommendation of a Magistrate Judge, who concluded that relief should be denied. I will adopt that R&R as to all of Petitioner's remaining[1] challenges, except his challenge to the jury instruction on reasonable doubt.

### III. Standard of Review

A. *The Anti-Terrorism and Effective Death Penalty Act of 1996*

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), I must defer to state court decisions on the merits of a federal habeas claim. Because the Pennsylvania Superior Court ruled on the propriety of the reasonable doubt instruction, its conclusion must be afforded AEDPA deference. AEDPA dictates that a federal court can only overrule a state court decision when it is "contrary to" or involves "an unreasonable application of" clearly established Supreme Court law, or where it involves an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2). This standard is "difficult to meet… because it was meant to be," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), but even under AEDPA, habeas corpus remains "a safeguard against imprisonment of those held in violation of the law," calling for "vigilant and independent" federal court review, *id.* at 86, 91. "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).[2]

B. *Ineffective Assistance of Counsel*

Petitioner's claim to relief for this defective jury instruction sounds in ineffective assistance of counsel. The standard for evaluating this claim is set forth in *Strickland v.*

---

[1] Petitioner has dropped his challenge under *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), at this stage. *Kloiber* requires a cautionary instruction where a trial identification is preceded by a failure to identify.

[2] In *Miller-El,* which involved an allegation of racial bias during jury selection under *Batson v. Kentucky,* 476 U.S. 79 (1986), the Court held that federal power to review under AEDPA extends even to such issues as determination of credibility.

4

*Washington*, 466 U.S. 668 (1984). Under *Strickland*, Petitioner must show: (1) that counsel performed deficiently, i.e., that his conduct fell below "an objective standard of reasonableness," *id.* at 688; and (2) prejudice, i.e., that confidence in the result of the original proceeding is undermined due to counsel's deficiency, *id.* at 694. *Strickland* prejudice is established where, but for the effect of counsel's errors, there is a reasonable probability that at least one juror would have had a reasonable doubt with respect to the defendant's guilt. *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014); *Strickland*, 466 U.S. at 695.

**IV. Discussion**

Petitioner claims his trial counsel was ineffective for failing to object to the instruction defining reasonable doubt for the jury. Because this ineffectiveness claim hinges on the constitutionality of the instruction, I will first address whether the instruction was proper, then address whether counsel's assistance was effective, and finally review the Pennsylvania Superior Court's disposition of this claim, applying the deferential standard outlined in 28 U.S.C. § 2254(d).

> A. *The trial court instruction defining reasonable doubt violated Petitioner's Fourteenth Amendment right to due process of law.*

The burden-of-proof instruction at Petitioner's trial began without issue. The trial judge employed a near-verbatim passage from the Pennsylvania Suggested Standard Jury Instruction: "A reasonable doubt is a doubt that would cause a careful, sensible person, a reasonably careful and sensible person, to hesitate or to refrain from acting upon a matter of the highest importance to their own affairs or to their own interests." NT 10/09/07 at 149. After this proper introduction, however, the judge interrupted with the following analogy:

> > It's helpful to think about reasonable doubt in this manner. Let's say, and I know that each one of you does have someone that you love very much, a spouse, a significant other, a child, a grandchild.

5

> Each one of you has someone in your life who's absolutely precious to you. If you were told by your precious one's physician that they had a life-threatening condition and that the only known protocol or the best protocol for that condition was an experimental surgery, you're very likely going to ask for a second opinion. You may even ask for a third opinion. You're probably going to research the condition, research the protocol. What's the surgery about? How does it work? You're going to do everything you can to get as much information as you can. You're going to call everybody you know in medicine: What do you know? What have you heard? Tell me where to go. But at some point the question will be called. If you go forward, it's not because you have moved beyond all doubt. There are no guarantees. If you go forward, it is because you have moved beyond all reasonable doubt.

*Id.* at 149–51. After this interlude, the judge finished her charge with a portion of the standard instruction: "[A] reasonable doubt must be a real doubt. It may not be an imagined one nor one that is manufactured to carry out an unpleasant responsibility. A reasonable doubt must fairly arise out of the evidence presented or out of the lack of evidence presented with respect to some element of each of the crimes charged." *Id.* at 151.

Petitioner claims, and I agree, that this instruction as a whole violated his due process rights. An instruction violates due process where jurors could interpret it to allow conviction based on any "degree of proof below" the reasonable doubt standard. *Cage v. Louisiana*, 498 U.S. 39, 41 (1991).[3] This is true not only in cases of misdefinition, but also where a correct definition is in some way muddled or distorted by additional instruction language. *See Whitney v. Horn*, 280 F.3d 240, 256 (3d Cir. 2002); *United States v. Gordon*, 290 F.3d 539 (3d Cir. 2002). While judges are afforded substantial discretion in how to instruct criminal juries, they cannot exercise such discretion in a way that distorts the controlling legal principles.

---

[3] *Cage* was reversed in part on other grounds by *Estelle v. McGuire,* 502 U.S. 62, 72 n.4 (1991), with respect to the standard of review. As to the issue before me, however—the definition of reasonable doubt— its analysis retains the force of law, because the Court later relied on *Cage* in finding an instruction erroneous. *Sullivan v. Louisiana,* 508 U.S. 275 (1993).

6

To test the constitutionality of the instruction given here requires consideration of how a reasonable juror would analyze the hypothetical decision presented in the court's charge. In a case involving a "life threatening" condition affecting someone "absolutely precious" to a juror, where there is only one "known protocol" or "best protocol," what level of doubt would need to exist before a juror would deny them a chance at life? Necessarily, one would need profound, if not overwhelming, doubt to deny a loved one their only or best opportunity for cure. But this is problematic because the Supreme Court has held that elevating the level of doubt a juror must have before acquittal is required violates the Due Process Clause. In *Cage v. Louisiana*, after the trial court had defined reasonable doubt as "grave uncertainty" and "substantial" doubt, the Supreme Court ordered a new trial. In doing so, the Court observed: "It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." 498 U.S. at 41.

The Commonwealth is correct that the charge in this case did not use the specific words found objectionable in *Cage*. But the trial judge communicated the same concepts by means of a powerful and emotionally charged metaphor. Objectively speaking, any person of decency and morals would strive to put aside doubt when faced with a single life-saving option for a loved one.[4]

The problem is compounded by the fact that the trial judge structured the hypothetical in terms of the jury proceeding to take action on behalf of their family member, twice using the phrase "if you go forward . . . ." The Supreme Court has made clear, however, that a charge on

---

[4] One objective indicator of the natural human instinct to fight for survival is reflected by the fact that 37 states now have some form of "Right to Try" statutes permitting patients with a terminal illness to obtain access to medications or treatments that have not yet been approved by the Food and Drug Administration. *See* New York University, Langone Health, Working Group on Compassionate Care and Pre-Approval Process, https://med.nyu.edu/pophealth/divisions/medical-ethics/compassionate-use#Q10 (last accessed Aug. 2, 2017).

reasonable doubt should be expressed "in terms of the kind of doubt that would make a person hesitate to act rather than the kind on which he would be willing to act." *Holland v. United States*, 348 U.S. 121, 140 (1954) (citation omitted). In the context of an otherwise sufficient charge, such error would not amount to a constitutional violation. But taken in combination with the trial court's hypothetical here, which would require an excessively high degree of doubt to reach an acquittal, the deficiency of the charge is clear. Whereas the concept of reasonable doubt is grounded in a hesitation to act, here the court's example posited a situation creating strong motivation to act. Given the issues involved, the court's hypothetical was structured in a way that would encourage the jury to **resolve** any doubt. In this respect, the issue here is quite similar to that in *Monk v. Zelez*, 901 F.2d 885 (10th Cir 1990). In *Monk*, where the Tenth Circuit ultimately granted a new trial before a military tribunal, the court faulted both the use of the word "substantial" in the reasonable doubt charge and the use of language couched in terms of "willingness to act." *Id.* at 890 (citing *Holland*). Even more significantly, *Monk* was one of the circuit court decisions that the Supreme Court cited with approval in *Cage*.

In analyzing the perils of framing reasonable doubt in terms of proactive decision-making, the *Monk* court also recognized that personalizing the standard dilutes the protection it is intended to provide. For this proposition, *Monk* quoted *Scurry v. United States,* 347 F.2d 468, (D.C. Cir. 1965), *cert. denied*, 389 U.S. 883 (1967), an opinion from Judge J. Skelly Wright. In *Scurry*, which had in turn relied on *Holland*, Judge Wright observed:

> A prudent person called upon to act in an important business or family matter would certainly gravely weigh the often neatly balanced considerations and risks trending in both directions. But, in making and acting on a judgment after so doing, such a person would not necessarily be convinced beyond a reasonable doubt that he had made the right judgment. Human experience, unfortunately, is to the contrary.

8

*Id.* at 470.[5] That insight applies with particular force where the personal situation the jury is told to use as a benchmark is a potentially life or death medical decision for a loved one. Viewed from one perspective, the responsibility implicit in the hypothetical has a fiduciary overtone.

The Commonwealth argues that Petitioner is advancing a different argument here than he did in state court, resulting in waiver, and further argues that his concession that part of the instruction was proper is fatal to his claim for relief. I disagree on both counts. First, as to waiver, I have reviewed the briefs submitted to the Pennsylvania courts and am convinced that Petitioner squarely addressed the same issues raised here.

And as to the fact that a portion of the charge was accurate, it is certainly the case that a charge must be considered its entirety. *See Whitney v. Horn*, 280 F.3d 240, 256 (3d Cir. 2002); *United States v. Gordon*, 290 F.3d 539 (3d Cir. 2002). But here, the court's hypothetical was the centerpiece of the charge. The judge, after giving one portion of the standard instruction, immediately proceeded to the problematic hypothetical, specifically instructing the jurors: "[I]t is helpful to think about reasonable doubt in this way . . . ." NT 10/09/07 at 150. The hypothetical was not ancillary to the court's charge,[6] but rather was conveyed to the jury as a model for understanding the very concept of reasonable doubt. Moreover, it was not mitigated by any further definition or explanation. The hypothetical's centrality to the entire charge illustrates why it does not matter that the court did not use the precise language prohibited by *Cage*. It is also why the initially accurate statement does not render the charge acceptable: the

---

[5] The court denied relief because of waiver, and declined to invoke the "plain error" rule because the incorrect portions of the charge were adequately offset by an adequate explanation of reasonable doubt.

[6] In quantitative terms (analyzed in terms of the lines in the transcript) it represented forty percent of the court's charge.

jury was instructed to consider the court's example as a proper exposition of the reasonable doubt standard—and it was not.

A nearly identical situation was faced by the court in *United States v. Pinkney*, 551 F.2d 1241, 1244 (D.C. Cir. 1976), where an otherwise flawless statement of the reasonable doubt standard was accompanied by a lengthy hypothetical that both overstated the degree of uncertainty required to find reasonable doubt and potentially trivialized the seriousness of the decision. As here, trial counsel there did not object, but on appeal the D.C. Circuit found plain error and ordered a new trial. In doing so, the court recognized the power of examples in the minds of jurors: "[I]t is likely that the jurors might have given undue weight to such a graphic example, which because of its length and nonlegal character might have been more easily comprehended and remembered than the standard instruction, resonat(ing) in the jury room as a standard of their function and responsibility." *Id.* at 1245 (citation and internal quotation marks omitted).

The reasonable doubt standard exists to protect the presumption of innocence, "that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." *In re Winship*, 397 U.S. at, 363. The Supreme Court has held that "the reasonable doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts at issue." *Id.* at 364 (citation and internal quotation marks omitted). A jury charge that defines this fundamental principle by means of an emotionally charged example weighted in favor of *resolving* doubt for the purpose of providing life-saving care to a loved one does not perform that function. I therefore conclude that it was reasonably likely that the jury would have applied a standard lower than reasonable doubt. *See Victor v. Nebraska*, 511 U.S. 1, 6 (1994).

B. *Trial counsel rendered ineffective assistance of counsel under the Sixth Amendment..*

My conclusion that the trial judge's instruction was constitutionally infirm does not, without more, entitle Petitioner to relief. That is because Petitioner's claim here is one for ineffective assistance of counsel, on the grounds that his trial counsel failed to object to that instruction.

*Strickland v. Washington*, 466 U.S. 668 (1984), requires courts to grant relief where counsel's actions "fell below an objective standard of reasonableness" (deficiency) and where "there is a reasonable probability that, absent [counsel's] errors, the fact finder would have had a reasonable doubt respecting guilt" (prejudice). *Id.* at 688, 695. Federal courts have decisively held that failure to object to an improper jury instruction can constitute deficient performance, *see Everett v. Beard*, 290 F.3d 500, 514–15 (3d Cir. 2002) (collecting cases), and that prejudice can result, *Thomas v. Varner*, 428 F.3d 491, 501 (3d. Cir. 2005) ("Courts have routinely declared assistance ineffective when the record reveals that counsel failed to make a crucial objection"); *Carpenter v. Vaughn*, 296 F.3d 138, 158 (3d Cir. 2002) (Alito, J.) (failure to object to a "misstate[ment] of Pennsylvania law on a point that could play a critical role in the jury's decision" resulted in prejudice). In this case, Petitioner's trial counsel failed to object to a highly unusual reasonable doubt instruction that could well have warped the jury's decision to convict his client of first-degree murder. Because that failure was both deficient and prejudicial, Petitioner was denied effective assistance of counsel at his trial.

1. <u>Deficiency</u>

Given the central importance of reasonable doubt in the protection of a defendant's rights, counsel's silence through the reasonable doubt charge constituted *Strickland* deficiency. Failure to make a "crucial" or "critical" objection is deficient where it is "not . . . the result of

11

reasonable professional judgment." *Strickland*, 466 U.S. at 690; *Thomas*, 428 F.3d at 501; *Carpenter*, 296 F.3d at 158. Because I have already found that the reasonable doubt instruction violated Petitioner's due process rights, I am persuaded that an objection to that instruction would have been "crucial" or "critical"—and that it should have been upheld. As the Commonwealth concedes, "[t]he test of ineffective assistance is not whether the court system would have ruled correctly on a valid objection or other defense tactic; it is whether the existing law would have required the courts to uphold the objection." Comm. Reply (Dkt. 13) at 21(quoting *Stephenson v. Wilson*, 619 F.3d 664, 670 (7th Cir. 2010)).

Because reasonable doubt is such a fundamental principle, particularly where the defendant does not testify, and the nature of the court's hypothetical was so instinctively problematic, it is difficult to fathom how any criminal defense lawyer could fail to object. The objection required was not exotic but straightforward: all counsel had to convey was that the court's hypothetical did not accurately communicate the standard for reasonable doubt, and would elevate the degree of doubt necessary for acquittal. Here, counsel's decision cannot accurately be described as the result of any strategy, let alone a reasonable one. Counsel gave an affidavit in the PCRA proceedings stating: "I ha[d] a vague recollection that Judge Hughes [(the trial judge)], either in this case or another case, said that her reasonable doubt instruction had been previously challenged and upheld on appeal." *See* Aff. of Mark Greenberg. He speculates that this is why he did not object to Judge Hughes's instruction. *Id*.

That is not strategy, but abdication. Given the central importance of the reasonable doubt standard, any prudent criminal defense attorney—let alone one who handles homicides—would have focused sharp attention as soon as the judge deviated from the standard instruction. Counsel does not even say that he engaged in some process of evaluation. Even if a judge were

to represent that her instruction had been affirmed before, that would not have rendered the instruction proper, nor eliminated counsel's right to be a vigorous advocate. Defense counsel have an obligation to preserve their clients' rights under the Constitution, and objections are routinely made in trial courts even in the face of adverse precedent from intermediate appellate courts, and it appears that there was no precedent validating this language.[7] In that regard, the Third Circuit has emphasized that the "contemporaneous objection rule" established by the Supreme Court in *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 238-39, (1940), plays a valuable corrective role: "[a] timely objection allows the trial court and the prosecutor to reconsider and perhaps change their course of conduct while still possible. If the defendant is successful, he avoids prejudicial error. Even if he is convicted, his timely objection delineates the points that may be appealed…" *Gov't of Virgin Islands v. Forte,* 806 F.2d 73, 75–76 (3d Cir. 1986)

On the record here, no purpose could be served by counsel's silence, and it stripped his client of vital protection. It was therefore a violation of *Strickland*'s requirement that counsel "advocate the defendant's cause" and "bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." 466 U.S. at 688; *see also Gabaree v. Steele*, 792 F.3d 991, 999 (8th Cir. 2015) (failure to object to prejudicial material was unreasonable when not the product of reasonable strategy); *White v. Thaler*, 610 F.3d 890 (5th Cir. 2010) (same); *Wilson v. Mazzuca*, 570 F.3d 490 (2d Cir. 2009) (same); *Earls v. McCaughtry*, 379 F.3d 489 (7th Cir. 2004) (same). For these reasons, counsel rendered deficient performance by not objecting to the judge's reasonable doubt charge.

---

[7] Although it would not change the analysis, it is worth noting that Commonwealth does not cite any endorsement of this charge by a Pennsylvania appellate court.

2. Prejudice

The nature of the error in this case disposes of the question of prejudice. In *Sullivan v. Louisiana*, 508 U.S. 275 (1993), Justice Scalia, writing for a unanimous Court, described the standard as describe the reasonable doubt standard as a "basic protection[n] . . . without which a criminal trial cannot reliably serve its function." *Id*. at 281 (alteration in original) (citation and internal quotation marks omitted). The Court held that "a misdescription of the burden of proof . . . vitiates *all* the jury's findings. A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, the wrong entity judge[s] the defendant guilty." *Id.* (alteration in original) (citation omitted and internal quotation marks omitted). Consequently, the *Sullivan* Court held, any error in defining reasonable doubt is "structural." *Id.*

The Supreme Court recently held that in the context of a *Strickland* claim, not every instance of structural error can be deemed prejudicial. *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017). But I read *Weaver* as carving out an exception for certain categories of ineffective assistance claims, and re-affirming rather than supplanting the rule in *Sullivan* when it comes to an error involving an instruction on reasonable doubt.[8]

Assuming, however, that prejudice may not be presumed, I would nonetheless conclude that prejudice has been established here. A federal court engaging in collateral review must conclude there is no "reasonable probability that at least one juror," *Wiggins v. Smith*, 539 U.S. 510, 537 (2003), if given the new information withheld because of counsel's errors, would have

---

[8] The language from *Weaver* that leads me to this conclusion is as follows: "Third, an error has been deemed structural if the error always results in fundamental unfairness. For example, if an indigent defendant is denied an attorney or if the judge fails to give a reasonable-doubt instruction, the resulting trial is always a fundamentally unfair one. It therefore would be futile for the government to try to show harmlessness." 137 S. Ct. at 1908.

14

reached anything less than a "subjective state of certitude of the facts in issue," *In re Winship*, 397 U.S. at 364 (citation omitted). The Supreme Court recently reaffirmed this principle in another *Strickland* decision, with Chief Justice Roberts identifying the prejudice inquiry as whether there is a "reasonable probability that . . . at least one juror would have harbored a reasonable doubt." *Buck v. Davis*, 137 S. Ct. 759, 776(2017).[9]

This is not a case where there was overwhelming evidence of guilt. The prosecution's success depended upon the jury's acceptance of testimony from an eyewitness that suffered from multiple flaws, the most glaring of which was his initial accusation against someone other than the defendant, and subsequent photo identification of two other individuals as the perpetrator. There was no corroborating physical evidence. In simple terms, it is the type of case where reasonable doubt plays a fundamental role.

> C. *The Pennsylvania Superior Court's decision rejecting Petitioner's ineffective assistance claim involved an unreasonable determination of the facts and an unreasonable application of clearly established Supreme Court law.*

On collateral review, the Pennsylvania Superior Court ultimately rejected Petitioner's ineffective assistance claim. Because the Superior Court's decision was not only incorrect but involved both an unreasonable determination of the facts in the state court record and an unreasonable application of clearly established Supreme Court law, it cannot withstand review.

    1.    <u>The Deference Due</u>

AEDPA deference is due to the Pennsylvania Superior Court's determination of this claim. Though the state court opinion provides, at best, a cursory review of the issue, I must nonetheless consider its denial of relief a "decision on the merits." *See Johnson v. Williams*, 133

---

[9] The very fact that the concept of "reasonable doubt" is fundamental to the question of prejudice under *Strickland* underscores why error of this kind must necessarily be considered structural in nature.

S. Ct. 1088, 1094 (2013). Accordingly, I must ask not whether the state court decision was right or wrong under federal law, but whether it (1) was contrary to, or involved an unreasonable application of, precedent clearly established by the U.S. Supreme Court, or (2) involved an unreasonable determination of the facts presented to the state court. 28 U.S.C. § 2254(d). A decision is "contrary to . . . clearly established federal law" if it "applies a rule that contradicts" established Supreme Court precedent or arrives at a result different from Supreme Court precedent on "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision involves an "unreasonable application" when it "identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412–13. To determine whether the state court's account of the facts is reasonable, I must ask whether that account is supported by sufficient evidence. *See Miller-El v. Dretke*, 545 U.S. 231, 266 (2005); *see also Yung v. Walker*, 296 F.3d 129, 136 (2d Cir. 2002) ("The focus of § 2254(d)(2)" is "on whether the [state] court's factual findings are supported by sufficient evidence."); *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (§ 2254(d)(2) "require[s] meaningful federal court review of the evidentiary record considered by the state courts").

Under AEDPA, I must review even the most perfunctory state court denials of habeas relief under a deferential standard, *see Johnson*, 133 S. Ct. at 1094, and I must ask whether the denial was reasonable under the state court's specified rationale. *Richter*, 562 U.S. at 102; *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc).

2. <u>Analysis of the State Court Decision</u>

Even in the face of this deferential standard, my analysis compels the conclusion that the Pennsylvania Superior Court's decision involved both an unreasonable determination of fact as

16

to what the charge represented, and an unreasonable failure to recognize the principles established by *Cage* and *Sullivan*. The state court's failure to engage substantively with either the language of the challenged instruction or the law governing Petitioner's claim leaves me unable to extract reason from its decision. Though this standard allows for substantial leeway, I must nonetheless find that the state court's denial of relief was unreasonable.

The state court, in its non-precedential opinion,[10] devoted only three short paragraphs to the trial court's charge. The first paragraph, which was two sentences long, summarized Petitioner's claim by stating that the trial judge's instruction "supposedly employed a misleading analogy to illustrate the Commonwealth's burden of proof," but that "Appellant admits that the court properly defined the Commonwealth's burden in a separate section of the charge." Sup. Ct. Op. at 11. This was the state court's only description of the instruction itself. Not only did it make no attempt to apply the holding of *Cage*; it did not even analyze, or indeed otherwise mention, the specific language of the charge.

The second paragraph of the state court's opinion contained just one sentence and a block quote, which established that judges are entitled to discretion in their jury instructions, so long as those instructions "clearly, adequately, and accurately present[ ] the law[.]" *Id.* at 12. And the third paragraph, in four sentences, concluded that the trial judge's analogy was a mere "example" that was "mean[t] to focus the jurors on the solemn nature of their deliberations." *Id.* The state court then stated that it had conducted a "thorough review of the trial court's entire jury charge," and concluded that "the jury received a comprehensive and accurate presentation of the law as it applied to this case." *Id.*

---

[10] Under the Superior Court's Internal Operating Procedures, with limited exceptions, a non-precedential opinion may not be relied upon or cited. 210 Pa. Code § 65.37.

The state court substantially misconstrued content of the challenged instruction. First, it inaccurately characterized the trial judge's analogy as a mere "example" when it amounted to forty percent of the total instruction on reasonable doubt. Moreover, as set forth at length above, the analogy was not even presented not as a mere "example," but rather put forth as a further explication of how the reasonable doubt standard was to be applied: the trial judge specifically prefaced the analogy with "it is helpful *to think about reasonable doubt in this way* . . . ." NT 10/09/07 at 150. In other words, this is not, as the Commonwealth suggests, a case where a proper jury instruction was cast into doubt by a "very brief, isolated excerpt from the charge." Comm. Reply (Dkt. 13) at 22 (citing *Commonwealth v. Harper*, 614 A.2d 1180, 1184 (Pa. Super. Ct. 2002)). Instead, there was a "very brief, isolated" correct statement of the law, followed immediately by a skewed hypothetical which the trial judge endorsed as demonstrating the meaning of reasonable doubt. The hypothetical cannot be excused as a permissible "solemnizing comment," *Cupp v. Naughten*, 414 U.S. 141 (1973), because it was put forward as a model for decision-making, and in the process elevated the level of doubt needed to acquit. The state court's reference to conducting a "thorough review of the trial court's entire jury charge" is little more than a catchphrase on this record, where the legally accurate portion of the charge was brief and truncated, and then undermined by a lengthy and emotionally charged illustration antithetical to the concept that was purportedly being explained. Simply put, there was nothing in the "entirety" of the charge that mitigated the improper example at its heart.

As to the state court's application of the applicable law, I conclude that it misapplied the due process standard that governs jury instructions. The court assigned great import to the fact that "[a]s even Appellant concedes, the trial court accurately defined the Commonwealth's burden in its charge to the jurors." Sup. Ct. Op. at 12. But this concession has no substantive

significance. Petitioner's counsel before the Superior Court rightly acknowledged that the trial judge properly defined reasonable doubt in the first instance, but cogently argued that, immediately thereafter, the judge endorsed an improper application of that standard. And following that improper example, the judge did not return to defining the standard in a way that might have offset the error. There is no question that, under clearly established federal law, an instruction that contains both proper and improper charges can violate a petitioner's rights. *See Francis v. Franklin,* 471 U.S. 307, 315 (1985) (where a jury charge includes both proper and improper content, "the potentially offending words must be considered in the context of the charge as a whole"); *Whitney v. Horn*, 280 F.3d 240, 256 (3d Cir. 2002) (though an instruction may in one place "correctly explain[] the law," it may in another contain a "constitutional flaw" that requires reversal); *United States v. Gordon*, 290 F.3d 539 (3d Cir. 2002) (similar). I am thus unpersuaded by the state court's heavy reliance on this "concession" from Petitioner, in light of its complete failure to address the principles the Supreme Court set forth in *Cage*. Because the trial judge did not explicitly use the terms prohibited by *Cage,* a deeper level of analysis was necessary to apply its concepts and identify the error. But the fact that the trial judge's use of metaphor makes the analysis more complex does not in any way excuse the violation—or lessen the error of the state court in conducting review. A subtle violation of the Constitution, no less than an overt one, is still a violation.

The state court cited two state cases in its opinion, but it did not reasonably apply either of them to the facts of this case. The first case was *Commonwealth v. Willis*, 990 A.2d 773 (Pa. Super. Ct. 2010), which the state court used to establish that courts have discretion in defining reasonable doubt so long as they "present[] the law" "clearly, adequately and accurately." The second case was *Commonwealth v. Thomas*, 602 A.2d 820 (Pa. 1992), cited for the proposition

19

that a jury charge may contain solemnizing language to "focus the jurors" on the heavy task at hand. These cases appropriately resolved their facts under the *Cage* standard for reasonable doubt instructions. However, the state court here failed to relate those cases' holdings to this case or explain how this instruction was clear, adequate, accurate, or solemnizing. Instead, without comparison to these authorities, the suggested standard instruction, or any other metric of constitutionality, the state court simply announced a conclusion that the instant instruction was a "comprehensive and accurate presentation of the law." Sup. Ct. Op. at 12. [11]

**V.     Conclusion**

A federal court has the responsibility to grant habeas relief if the state court's decision on review depended on an unreasonable determination of the facts or an unreasonable application of clearly established Supreme Court law. *See, e.g.*, *Grant v. Lockett*, 709 F.3d 224, 238 (3d Cir. 2013); *Breakiron v. Horn*, 642 F.3d 126, 143 (3d Cir. 2011); *Showers v. Beard*, 635 F.3d 625, 632 (3d Cir. 2011); *Lambert v. Beard*, 633 F.3d 126, 133 (3d Cir. 2011), *judgment vacated on other grounds sub nom. Wetzel v. Lambert*, 132 S. Ct. 1195 (2012), *on remand*, 537 F. App'x 78 (3d Cir. 2013). Here the state court's decision to reject Petitioner's ineffective-assistance claim rested on both types of error and thus cannot stand.

Petitioner's request for a writ of habeas corpus will be granted on Claim II of his petition. He must be retried within 180 days or released. An appropriate order follows.

/s/ Gerald Austin McHugh<br>
United States District Judge

---

[11] Although this opinion takes strong issue with the state court's resolution of Petitioner's claim, it should be recognized that the Pennsylvania Superior Court faces a daunting volume of criminal appeals, 4,782 in 2016 alone. Caseload Statistics of the Unified Judicial System of Pennsylvania: 2016, *available at* http://www.pacourts.us/assets/files/setting-768/file-6151.pdf?cb=ffc504 (last visited Aug. 9, 2017). Most of these appeals raise multiple issues, as was the case here. Given the challenges presented by such a workload, habeas review becomes all the more important as a safeguard.